MULLIN HOARD & BROWN, LLP
David R. Langston, SBN: 11923800
M. Andrew Stewart, SBN: 24037554
    (Application Pending – S. Dist. Tex.)
P.O. Box 2585
Lubbock, Texas 79408
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
*Attorneys for City Bank*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 10-30227-KKB-11 |
| **MARHABA PARTNERS, LTD.** | § | |
| Debtor. | § | |

**OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL**

TO THE HONORABLE KAREN K. BROWN, U.S. BANKRUPTCY JUDGE:

    NOW COMES City Bank, a secured creditor and party in interest in the above referenced bankruptcy case, and files this Objection to Debtor's *Expedited Motion For Interim and Final Orders Authorizing the Debtor's Use of Cash Collateral*, and respectfully states as follows:

    1.    The Debtor, Marhaba Partners, Ltd. (the "Debtor"), filed for relief under Chapter 11 of the United States Bankruptcy Code on January 5, 2010.

    2.    City Bank is a creditor and party in interest in this bankruptcy case. Prior to the petition date, on or about April 24, 2008, the Debtor executed a promissory note in the original principal amount of $10,850,000.00 (the "Note") in favor of City Bank. A true and correct copy of the Note is attached hereto as Exhibit "A." The purpose of the Note was to finance a portion of the purchase price of certain real estate located in Harris County, Texas and on which there are two apartment complexes known as the "McCue Street Apartments."

3.     To secure the Note, the Debtor executed a Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement, thereby pledging all Land, Accounts, Personalty, Fixtures, Equipment, General Intangibles, Leases and Rents, and deposit accounts, as those terms are defined in the Deed of Trust and other loan documents executed by Debtor in favor of City Bank, in addition to the real estate known as the "McCue Street Apartments", and that arose from the Debtor's operation of the McCue Street Apartments, to City Bank.  A true and correct copy of the Deed of Trust is attached as Exhibit "B". In order to perfect its security interest in the collateral described in the Deed of Trust, City Bank recorded the Deed of Trust at Document # 20080218186 of the Official Public Records of Real Property of Harris County, Texas and filed a UCC-1 financing statement with the Texas Secretary of State on April 29, 2008.  Additionally, City Bank required Debtor to maintain a demand deposit account for the deposit of all rents and profits from the McCue Street Apartments (the "Account") so that City Bank would maintain perfection and control of the Account under the Uniform Commercial Code.[1]  A true and correct copy of the UCC-1 filed with the Texas Secretary of State is attached as Exhibit "C."

4.     As of January 5, 2010, the date Debtor filed bankruptcy, the Debtor owed City Bank $10,850,000.00 in principal and $61,031.25 in accrued but unpaid interest on the Note. City Bank therefore asserts a secured claim against Debtor in the amount of at least $10,911,031.25 plus additional fees, costs, expenses and other charges to which City Bank is entitled.  Additionally, the Debtor has other obligations to City Bank, and pursuant to the terms of the Deed of Trust and other agreements between City Bank and the Debtor, the property securing the Note also serves as collateral for the other obligations of Debtor to City Bank. As of the date the Debtor filed bankruptcy, the Debtor owed City Bank at least $9,374,635.00 in principal and interest on these other

---

[1] Concurrently herewith, City Bank has filed a Notice of Security Interest in Rents and Profits.

obligations, exclusive of penalties, fees, attorneys' fees and other costs City Bank is permitted to collect under its loan documents.

5. Upon information and belief, the appraised fair market value of the real estate directly securing the Note under the Deed of Trust (the "McCue Street Apartments"), will be less than the amount owed to City Bank, and certainly less than the amount owed to all creditors on the McCue Street Apartments.

6. The Debtor's obligations under the Note is secured by, among other things, a properly perfected lien on and security interest in substantially all personal property assets of the Debtor and the proceeds thereof, including all "cash collateral" of Debtor as that term is defined in 11 U.S.C. §363(a), because the Debtor's only source of income from operations is the rental income from the McCue Street Apartments.

7. In addition to City Bank's security interests, City Bank understands that other creditors claim a security interest in City Bank's cash collateral and other personal property. For instance, the Debtor's amended schedules reflect that Lasco McCue, Ltd. has a second lien against the real estate known as the McCue Street Apartments, and its lien amount is scheduled at $4,625,000.00. However, City Bank's security interest and liens against the real estate and the personal property collateral of the Debtor arising from the McCue Street Apartments was filed before any lien of Lasco McCue, Ltd., and therefore City Bank asserts that it has the first lien against the Debtor's personal property, including proceeds thereof and "cash collateral" as that term is defined in 11 U.S.C. §363(a).

8. Prior to the Petition Date, Debtor maintained an operating account with City Bank; accordingly, City Bank was able to perfect its lien and security interest in the Debtor's cash by

possession. Since the bankruptcy filing, however, the Debtor has not made deposits to its existing account at City Bank.

9. In the Debtor's Motion, it seeks to use the rents and profits from the McCue Street Apartments and to make "adequate protection" payments of $20,000.00 to City Bank– consisting of less than even an interest only payment on the debt owed to City Bank at its applicable non-default contract rate of interest. City Bank agreed to the Debtor's use of cash collateral for the first month it filed bankruptcy, but reserved the right to object to future months both on an interim and final basis. As part of the Agreement, the Debtor was to "account to City Bank on a monthly basis for all cash collateral." Additionally, the Debtor was to provide City Bank with a report of sources and uses of Cash Collateral expended and the difference between budgeted and expended Cash Collateral. To date, the Debtor has not provided City Bank with complete information concerning the income and expenses of the Debtor.

10. City Bank now objects based on its present understanding of the Debtor's financial condition, that Debtor has used cash collateral to pay pre-petition expenses without City Bank or the Court's permission, that Debtor intends to use cash collateral to pay personal expenses of the Debtor's insiders, and the Debtor's financial situation is such that the cash collateral is no longer adequate to service even the normal operating expenses of the Debtor's McCue Street Apartments, much less service City Bank's debt.

## II.
## OBJECTIONS

11. City Bank hereby objects to the Motion to the extent that the Debtor seeks to use rents and profits derived from the McCue Street Apartments in its operations in any manner other than to maintain the McCue Street Apartments, pay insurance and taxes on the real estate, and service the

principal and interest owing to City Bank. City Bank does not consent to use of the Cash Collateral outside of those expenses.

### A.    *The Proposed Budget is Deficient*

12.    Even a cursory review of the Debtor's current budget demonstrates that the proposed budget is deficient. First, to the extent the Debtor seeks authority to use cash collateral on a limited, emergency basis, it is unclear which expenses the Debtor seeks such authority to pay, considering the budget shows there is not enough income to generate full payment on the expenses. To the extent the budget proposes to pay personal expenses from the Debtor's income, City Bank objects. Furthermore, the proposed budget does not establish which of the payments are absolutely critical to pay now, or whether there is some basis to pay after the final hearing on the matter. The Motion is deficient for failing to specify with particularity the Debtor's precise cash needs during the period between the interim and final hearings on the Motion.

13.    City Bank originally agreed to allow the Debtor to use cash collateral for one month, in order to get additional information from the Debtor on its actual income and expenses vs. its budget. Since the time of the filing of the Motion and the Court's prior order allowing the use of cash collateral for the first month, the Debtor has not given City Bank complete and accurate information concerning the income and expenses. Furthermore, the Debtor has not obtained City Bank's permission to use the Cash Collateral outside of one months worth of expenses (January 2010). Since that time, it is unclear whether the Debtor has used City Bank's cash collateral without authority, but City Bank presumes Debtor has.

14.    The Debtor attempts in its preliminary budget to pay expenses that are not related to maintaining the McCue Street Apartments, including a salary to an insider of $12,000.00 per month, a payment to Debtor's counsel of $10,000 per month, payments to accountants, and payments to

other parties unrelated to maintaining the apartments. These expenses are in addition to the Debtor's principal officer, David Lucyk, being paid a $2,000 per month management fee in the budget for actually operating one of the apartment complexes, and payment of another $2,000 per month in a management fee to an affiliated and related party to Mr. Lucyk. These expenses are not necessary to maintain the McCue Street Apartments.

15. Since the time the Debtor proposed this initial budget, City Bank has also learned that the income figures used in the budget are not the real income figures. Based on information provided by the Debtor to City Bank, City Bank believes that the income used for the budget projections is "if the apartments are 100% occupied". Because the apartments are not 100% occupied, and there are tenants who for various reasons have reduced or free rent, the income on the apartments is actually much less than projected. City Bank does not have complete information to make a determination of what the actual income on the apartments is, but it is believed it is closer to $50,000.00 per month or less, not the $76,000 originally projected.

16. The budget is further deficient in that it fails to include various material expenses, including property taxes. These omissions are important given that the Debtor's budget reveals very close margins, and even projects that the Debtor's cash flow will result in a negative cash balance between now and the final hearing. The Debtor has not paid ad valorem taxes for 2009 and is not proposing to budget any expense for ongoing tax obligations.

17. Additionally, the last insurance certificate provided to City Bank reflects that either 1) the McCue Street Apartments are worth substantially less than the Debtor will argue they are worth ($2,000,000.00 or less, according to the Debtor's insurance on the apartments) or 2) the McCue Street Apartments are significantly under-insured. City Bank objects to the use of its cash collateral while the property is not being adequately insured.

**B.     *City Bank is a secured creditor entitled to adequate protection under §§ 361 and 363(c)(2)***

18.     Section 363(c)(2) prohibits the use, sale or lease of cash collateral unless either "each entity that has an interest in such cash collateral consents[, or] the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). As described above, City Bank is a secured creditor of the Debtor, holding properly perfected liens on and security interests in all prepetition collateral and the proceeds thereof. 11 U.S.C. § 552(b) ("…if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds…of such property, then such security interest extends to such proceeds…").

19.     "On request of an entity that has an interest in property…proposed to be used, sold, or leased, by the trustee, the court…shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). At this time, City Bank does not consent to the continued use of cash collateral, and specifically requests that the Court condition the further use of cash collateral as necessary to adequately protect City Bank's interests in all prepetition collateral.

**C.     *The adequate protection proposed by the Debtor is inadequate***

20.     City Bank would show the Court that it lacks adequate protection related to the indebtedness that is secured by the McCue Street Apartments. The debt owing is approximately $10,900,000.00; there exists a statutory ad valorem tax lien against the property in the amount exceeding $216,000.00 (see Exhibit "D", printouts from Harris County Central Appraisal District website showing property taxes owed); there is a second lien against the property in excess of $4,500,000.00. The value of the property is far less than the more than $15,600,000.00 worth of liens against the property. No equity cushion exists.

21.     The concept of adequate protection is specifically articulated in § 361, which states that, where adequate protection is required under § 363, such adequate protection may be provided, in relevant part, by—

(1)     Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the…use, sale or lease under section 363 of this title…results in a decrease in the value of such entity's interest in such property;

(2)     providing to such entity an additional or replacement lien to the extent that such…use, sale [or] lease… results in a decrease in the value of such entity's interest in such property; or

(3)     granting such other relief…as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. 11 U.S.C. § 361.

22.     In the present case, however, no unencumbered assets are available to support replacement liens, and the Debtor's cash flow is barely sufficient to meet current operating expenses and costs of administration. Moreover, because the Debtor has not demonstrated that the apartment is 100% occupied, the Debtor's income is almost certain to decrease in an amount that exceeds the Debtor's expenses of operation. Additionally, the Debtor has not provided adequate insurance for the property, insuring it at less than $2,000,000.00.  As such, City Bank's interest in its collateral is not protected.

23.     The adequate protection proposed by the Debtor in the Motion is wholly inadequate, because the Motion as it presently stands does not propose any adequate protection for the bank at all.  Similarly, the Debtors' promise of increased collateral values through continued operations is speculative at best, at least with respect to newly created receivables, and is useless to protect City Bank without replacement liens encumbering postpetition assets.

24.     Therefore, to the extent the Court authorizes the continued use of cash collateral on an interim basis, City Bank requests the following as "adequate protection" of its interests in the prepetition collateral:

(a)     City Bank shall be granted a "replacement lien" on all property acquired by Debtor and after the Petition Date, including both inventory and receivables and the proceeds thereof.

(b)     City Bank shall be granted a super-priority administrative expense claim pursuant to § 507(b).

(c)     Debtor shall provide City Bank with a weekly cash flow forecast of all projected revenues and expenses, together with a weekly "budget to actual" comparison, which cash flow forecast shall be subject to City Bank's review and approval. The Debtor should only be allowed to use cash collateral for 1) maintenance of the McCue Street Apartments, 2) property taxes and insurance, 3) service of City Bank's debt. If the Debtor's continued operations of the apartment complex does not generate income in excess of operating expenses, City Bank proposes that City Bank be allowed to begin to operate the apartments in order to decrease operating expenses that are paid to the Debtor and insiders for continuing to operate the apartments.

(d)     In light of Debtor's recent activity in its existing bank account at City Bank, the Debtor should be required to open any new cash accounts (including cash sweep, lockbox and operating accounts) at City Bank to ensure the continued perfection of City Bank's existing liens on Debtor's cash. In the alternative, the Debtor should be directed to execute one or more account control agreements or similar documents as necessary to ensure the continued perfection of City Bank's liens in Debtor's cash.

25. City Bank reserves the right to seek additional adequate protection at the interim or final hearing on the Motion.

26. City Bank is entitled to additional adequate protection for the use of the rents and profits that serve as its collateral for the indebtedness owed to it by Debtor. All revenues derived from this real property must be used to maintain the property, pay the taxes and insurance, and service City Bank's debt. No funds derived from this property should be used by the Debtor for any other of its operations. Furthermore, Debtor should be directed by the Court to adequately insure the property.

WHEREFORE, City Bank respectfully request that this Court enter an order either (i) denying the Debtor's request to further use cash collateral or (ii) conditioning any such use of cash collateral on a grant of adequate protection consistent with the relief requested herein, and granting such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

MULLIN HOARD & BROWN, LLP
David R. Langston, SBN: 11923800
M. Andrew Stewart, SBN: 24037554
    (Application Pending – S. Dist. Tex.)
P. O. Box 2585
Lubbock, Texas 79408-2585
Tel: (806) 765-7491
Fax: (806) 765-0553


By:   /s/ David R. Langston
      David R. Langston
***Attorneys for City Bank***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Objection was sent regular U.S. Mail, postage prepaid, on this 4th day of March, 2010, to the following listed parties in interest:

1. Marhaba Partners, Ltd.
   1499 Potomac
   Houston, Texas 77057
   ***Debtor***

2. Liz Freeman
   PORTER & HEDGES LLP
   1000 Main Street, 36th Fl.
   Houston, Texas 77002
   ***Attorney Debtor***

3. Shu Mak
   City Bank Texas
   10080 Bellaire Blvd., Suite 101
   Houston, TX 77072
   ***Creditor***

4. All parties on the attached mailing matrix.

By:   /s/ David Langston
       David Langston