MULLIN HOARD & BROWN, LLP
David R. Langston, SBN: 11923800
   (S. Dist. Bar No. 9489)
M. Andrew Stewart, SBN: 24037554
   (S. Dist. Bar No.: 1065805)
Vanessa Gonzalez, SBN: 24065307
   (S. Dist. Bar No.: 1027755)
P.O. Box 2585
Lubbock, Texas 79408
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
*Attorneys for City Bank*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 10-30227-KKB-11 |
| **MARHABA PARTNERS, LTD.** | § | |
|     Debtor. | § | |

**OBJECTION TO CONFIRMATION OF
DEBTOR'S FIRST AMENDED PLAN OR REORGANIZATION**

TO THE HONORABLE KAREN K. BROWN, U.S. BANKRUPTCY JUDGE:

NOW COMES, CITY BANK and files this Objection to Confirmation of Debtor's First Amended Plan of Reorganization (the "Objection to Confirmation"). In support thereof, City Bank would show the Court as follows:

**I.
BACKGROUND**

1. On January 5, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. To date, no trustee,

examiner or official committee of unsecured creditors has been appointed in the above-captioned bankruptcy proceeding (the "Bankruptcy Case").

3. On March 18, 2010, the Court entered its Second Interim Order (I) Authorizing Debtor to Use Cash Collateral, (II) Providing Adequate Protection and Granting Liens, Security Interests and Other Relief to City Bank; and (III) Scheduling a Final Hearing Pursuant to FED. R. BANKR. P. 4001(b) [Docket No. 49] (the "Second Interim Order").[1]

### A. City Bank's Claims

4. City Bank is a secured creditor of the Debtor's bankruptcy estate by virtue of a lending relationship that includes multiple development loans, promissory notes, deeds of trust, security agreements, assignments of collateral, and City Bank's loans are secured by multiple parcels of collateral. The claims of City Bank, including the current loan documentation concerning City Bank's secured claims, are generally described and attached as exhibits to City Bank's proof of claim number 23-1 on file in this bankruptcy case (the "Proof of Claim").

5. City Bank's claims are generally described as follows:

*For the McCue Apartments Loan (Loan No. ***0023):*

On or about April 24, 2008, the Debtor executed that certain promissory note in the original principal sum of $10,850,000.00 (the "McCue Note") in favor of City Bank. A true and correct copy of the McCue Note is attached to the Proof of Claim as Exhibit "E." The Debtor executed the McCue Note to, among other things, finance a portion of the purchase price of certain real estate located in Harris County, Texas and on which there are two apartment complexes known as the "McCue Street Apartments."

To secure the McCue Note, the Debtor executed that certain Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement (the "Deed of Trust"), thereby pledging all Land, Accounts, Personalty, Fixtures, Equipment, General Intangibles, Leases and Rents, and deposit accounts, as those terms are defined in the Deed of Trust and other loan documents executed by Debtor in favor of City Bank, in addition to the real estate known as the "McCue Street Apartments", and that arose from the Debtor's operation of the McCue Street Apartments, to City Bank. A true and

---

[1] The Second Interim Order only addressed cash collateral derived from the Debtor's McCue Apartments, not other real estate of the Debtor as discussed more fully below.

correct copy of the Deed of Trust is attached as Exhibit "F" to the Proof of Claim. In order to perfect its security interest in the collateral described in the Deed of Trust, City Bank recorded the Deed of Trust at Document # 20080218186 of the Official Public Records of Real Property of Harris County, Texas and filed a UCC-1 financing statement (the "UCC") with the Texas Secretary of State on April 29, 2008. A true and correct copy of the UCC is attached as Exhibit "G" to the Proof of Claim.

As of the Petition Date, the Debtor owed City Bank $10,850,000.00 in principal and $61,031.25 in accrued but unpaid interest under the McCue Note.

*For the Spring Trace Retail Loan (Loan No. ***0036):*

On or about November 25, 2009, the Debtor executed that certain promissory note in the original principal amount of $8,433,111.00 (the "Spring Trace Retail Note") in favor of City Bank. A true and correct copy of the Spring Trace Retail Note is attached to the Proof of Claim as Exhibit "A." The Debtor executed the Spring Trace Retail Note to, among other things, re-finance a portion of the purchase price of certain real estate located in Harris County, Texas and which the Debtor refers to in its First Amended Plan and Disclosure Statement as the "Spring Trace Retail" development. The property is described more fully by metes and bounds on the exhibits to the Spring Trace Retail DOT discussed below.

To secure the Spring Trace Retail Note, the Debtor executed a Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement dated November 25, 2009 (the "Spring Trace Retail DOT"). A true and correct copy of the Spring Trace Retail DOT is attached to the Proof of Claim as Exhibit "B." The Spring Trace Retail DOT secures property described on several exhibits to such deed of trust. The Debtor also assigned rights to certain reimbursement contracts with the Harris County Municipal Utility District No. 402 in connection with this loan (the "Assignments"). True and correct copies of the Assignments are attached to the Proof of Claim as Exhibits "C" and "D."

The Spring Trace Retail loan is a re-financing of previous debt, whereby the Debtor originally assigned (by Collateral Assignment of a Promissory Note and Deed of Trust) the deed of trust that the Debtor held in portions of the Spring Trace Retail real estate. In 2005, prior to any contract between the Debtor and the Humble Independent School District ("Humble ISD"), the Debtor sold portions of the Spring Trace Retail property to a third party called Lasco Spring Trace Retail, Ltd. ("Lasco"), retaining the note and deed of trust against what it sold, and pledging the same to Texas State Bank. City Bank's original loan to the Debtor on the Spring Trace Retail property in 2007 was a re-financing of the debt of the Debtor to Texas State Bank (which was secured by the collateral assignment of the Debtor's rights in the Lasco debt and deed of trust), and was also secured by additional real estate that comprised the remainder of the Spring Trace Retail real estate. The real estate that had previously been sold by the Debtor to Lasco shall be referred to herein as the "Lasco Spring Trace Retail" property, and the remainder of the Spring Trace Retail property that secures City Bank's debt will be referred to herein as the "Marhaba Spring Trace Retail" property.

In 2009, the Debtor granted the Spring Trace Retail DOT, re-acquired the underlying Lasco Spring Trace Retail property from Lasco by a deed in lieu of foreclosure and re-financed the outstanding loan to City Bank at such time. Pursuant to the terms of the Deed in Lieu of foreclosure, City Bank and the Debtor retained, and did not release, the previous liens against the Lasco Spring Trace Retail property and reserved the right to vacate the deed in lieu of foreclosure so that City Bank and the Debtor could foreclose on the real estate if they so desired. Thus, City Bank still retains its rights under the collateral assignment of note and lien (whereby the Debtor had pledged the deed of trust granted by its purchaser to the property).

As of the Petition Date, the Debtor owed City Bank $8,345,752.83 in principal and $41,812.11 in accrued but unpaid interest on the Spring Trace Retail Note.

### *For the Spring Trace CAD Loan (Loan No. \*\*\*0032)*

On or about June 29, 2009, the Debtor executed that certain promissory note in the original principal amount $920,000.00 (the "Spring Trace CAD Note") in favor of City Bank. A true and correct copy of the Spring Trace CAD Note is attached to the Proof of Claim as Exhibit "D."

To secure the Spring Trace CAD Note, the Debtor executed a Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement dated June 29, 2009 (the "Spring Trace CAD DOT"). A true and correct copy of the Spring Trace CAD DOT is attached to the Proof of Claim as Exhibt "I." The Spring Trace CAD DOT secures property described on several exhibits to such deed of trust. City Bank has a first lien on this property.

As of the Petition Date, the Debtor owed City Bank $751,559.09 in principal and $2,280.78 in accrued but unpaid interest on the Spring Trace CAD Note.

### *For the Brookshire/Olympia Loan (Loan No. \*\*\*0038)*

On or about November 2, 2009, the Debtor executed that certain promissory note in the original principal amount $231,246.93 (the "Brookshire/Olympia Note") in favor of City Bank. A true and correct copy of the Brookshire/Olympia Note is attached to the Proof of Claim as Exhibit "J."

To secure the Brookshire/Olympia Note, the Debtor executed a Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement dated November 2, 2009 (the "Brookshire DOT"). A true and correct copy of the Brookshire DOT is attached to the Proof of Claim as Exhibit "K." The Brookshire DOT secures property described on several exhibits to such deed of trust. City Bank has a third lien on this property. To secure the Brookshire/Olympia Note, the Debtor also executed a Deed of Trust, Security Agreement, Assignment of Leases and Rentals and Financing Statement dated November 2, 2009 (the "Olympia DOT"). A true and correct copy of the Olympia DOT is attached to the Proof of Claim as Exhibit "L." The Olympia DOT

secures property described on several exhibits to such deed of trust. City Bank has a third lien on this property.

As of the Petition Date, the Debtor owed City Bank $231,246.93 in principal and $1,983.26 in accrued but unpaid interest on the Brookshire/Olympia Note.

### *As to All Loans*

Pursuant to the terms of the Deed of Trust and other agreements between City Bank and the Debtor, the property securing the McCue Note, Spring Trace Retail Note, the Spring Trace CAD Note and the Brookshire Note serves as collateral for the other obligations of Debtor to City Bank. As of the Petition Date, the Debtor owed City Bank at least **$20,285,666.25** in principal and interest on all of its obligations, exclusive of penalties, fees, attorneys' fees and other costs City Bank is permitted to collect under its loan documents.

B.    **Plan Treatment**

6.    The Debtor proposes to treat City Bank's secured claim in Classes 3A, 3B, 3C and 3D of the Debtor's First Amended Plan of Reorganization [Docket # 100] (the "Plan"). Specifically, the Debtor proposes that for three of City Bank's claims (related to the Spring Trace Retail Note, Spring Trace CAD Note and Brookshire/Olympia Note) the Debtor shall, not later than December 31, 2010, pay to City Bank the full amount owed on such notes, including postpetition interest at the contract rate, late charges and other reasonable amounts due and payable under the Note, and if such obligations are not paid, then City Bank is permitted to pursue all remedies available to it with regards to its Collateral. City Bank's liens in and remedies against its Collateral shall remain in full force and effect. *See* Plan at §§ 5.5 – 5.8. The treatment of City Bank's claim on the McCue Note is almost identical, except that the deadline for payment of the Debtor to City Bank in full of the McCue Note is expedited to September 1, 2010 (such that if City Bank is not paid in full by September 1, 2010 on at least the McCue Note,

that the stay automatically lifts and City Bank would be able to pursue its remedies against its collateral on September 2, 2010).[2]

7. In addition to the treatment of City Bank's claims, other provisions of the Plan directly impact City Bank's claims within the Plan. First, §5.17 of the Plan provides a payment of only $100,000.00 to unsecured creditors. Of course, City Bank and other secured creditors are given the right to assert unsecured deficiency in the event that the collateral securing the Debtor's obligations does not satisfy a secured lender's claim in its entirety. At this time, whether the collateral will yield sufficient proceeds in the event that the property is foreclosed upon to pay City Bank's claim in full remains unknown. As such, retention of equity interests by the equity holders of the Debtor likely violates the absolute priority rule. 11 U.S.C. §1129(b)(2)(B)(2).

8. Second, Section 10.1(a) of the Plan provides, "Road Access Easement and Construction Agreement with Humble ISD. Marhaba intends to assume the Road Access Easement and Construction Agreement [the "Marhaba Easement Agreement"] and complete the roadways and satisfy the lien claims of JAHO and Terra upon the Effective Date. Marhaba will, within its power, execute any necessary documents required by Humble ISD to ensure completion of the roadway and to ensure that such obligations run with the land." As discussed below, the Marhaba Easement Agreement ONLY relates to a *portion* of the Spring Trace Retail property that the Debtor owns and to which City Bank has a lien (it relates only to a portion of the Marhaba Spring Trace Retail property, but does NOT relate at all to the Lasco Spring Trace Retail property). Humble ISD also filed an objection to the confirmation of the Plan (the "Humble Objection"), to which City Bank takes issue.

---

[2] This treatment by the Debtor is in line with what the Court ordered in response to the agreement between the Debtor and City Bank concerning City Bank's motion to lift stay against the property securing the McCue Note. *See* Agreed Order With Regard to Motion for Relief from the Automatic Stay filed by City Bank [Docket No. 69].

9. City Bank asserts that it is not appropriate at this juncture, or through the auspices of a confirmed bankruptcy plan of re-organization, to re-write the Debtor's agreements with Humble ISD, and/or to make state law property determinations over whether the personal financial obligations of the Debtor to complete construction of a roadway, can be binding on a future owner of the land. City Bank asserts that some of the covenants and obligations in the Marhaba Easement Agreement are "personal covenants" of the Debtor, and therefore do not "run with the land" under Texas law.

10. In Texas, a covenant runs with the land only if (1) it touches and concerns the land, (2) it relates to a thing in existence or specifically binds the parties and their assigns, (3) it is intended by the original parties to run with the land, and (4) the successor to the burden has notice. *Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). Covenants that run with the land bind the heirs and assigns of the covenanting parties, while personal covenants do not. *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 235 (Tex.App.-Fort Worth 1989, writ denied).

11. By virtue of the language inserted in the Plan (as insisted on by Humble ISD), and by virtue of the language suggested to be included in a confirmation order by Humble ISD, Humble ISD is essentially seeking a declaratory judgment of these rights, covenants and obligations at this time, without a legal proceeding to determine whether the covenants are personal or real. City Bank objects that the same is improper. The agreements between the Debtor and Humble ISD speak for themselves. City Bank asserts that there should be no additional language put in the Plan to try and bolster Humble ISD's position, and does not consent or waive any right to challenge Humble ISD's position with respect to the nature of the

obligations under the Marhaba Easement Agreement, and whether the same are binding on future landowners.

12. Additionally, the agreement attached to the Humble Objection contemplates an enlargement of rights to Humble ISD because the Road Access Easement Agreement and the Amendment to the Road Access Easement Agreement between Humble ISD and Lasco (the "Lasco Easement Agreements") are not one in the same as the Marhaba Easement Agreement. The Lasco Easement Agreements that Humble ISD is attempting to amend, do not impose on Lasco, nor its successors and assigns (i.e. City Bank or a future purchaser of Lasco's land) an affirmative obligation to construct roads on the Lasco Spring Trace Retail tract (which is a certain 60.431 acre tract of land situated in Harris County, Texas). Instead, the Lasco Easement Agreements simply bestow Humble ISD with two (2) certain thirty (30) foot wide easements, more particularly illustrated as Roadway No. 2 and Roadway No. 3, respectively.[3]

13. The Debtor was not the owner of the Lasco Spring Trace Retail tract at the time of the Lasco Easement Agreements, and therefore, any "obligation" or "covenant" by the Debtor to construct roadways was not imposed upon the land of Lasco, because Lasco did not covenant to build anything. *See Inwood*, 736 S.W.2d at 635.

14. Humble now asks the Court to re-write the Lasco Easement Agreements such that any successor or assign of the Lasco Tract is burdened with an affirmative obligation to construct Roadway No. 2. The proposed Second Amendment to the Road Access Easement Agreement which Humble attached to its objection (the "New Agreement") is an impermissible means by which to obligate any successor and assign of the Lasco Tract to construct Roadway No. 2. As

---

[3] City Bank concedes that the Debtor has an affirmative obligation to construct Roadway No. 2 and Roadway No. 3 under the Road Access Easement and Construction Agreement between the Debtor and Humble ISD, although as stated above, City Bank objects to a determination at this juncture that the same is binding on the Marhaba Spring Trace Retail land. However, such affirmative obligation does not and should not run with the Lasco Tract, as contemplated by Humble ISD's proposed Second Amendment to the Road Access Easement Agreement.

such, City Bank hereby objects to the Plan and the New Agreement. Under no circumstances can the Lasco property be burdened with a covenant that did not exist in the original agreement.

15. City Bank is rightfully concerned that confirmation of the Plan with these provisions, coupled with the binding nature of certain provisions of the Plan (namely §7.2, 13.1 and 13.2) as well as Section 1141 of the Bankruptcy Code could prevent City Bank from a determination of whether any future claims asserted by Humble ISD relating to the collateral securing the Spring Trace Retail note are binding on a future landowner. City Bank's concern is further warranted when viewed in light of the proposed language Humble ISD asserts should be added to the Plan, the New Agreement and the other matters raised in Humble ISD's objection to confirmation of the Plan [Docket No. 109].

WHEREFORE, PREMISES CONSIDERED, City Bank prays that the Court deny the confirmation of the Plan, or in the alternative, to expressly limit the effect of the confirmation order on the determination of the contractual issues between the Debtor, Humble ISD and City Bank, and granting City Bank such other and further relief as the Court deems just and proper.

Respectfully Submitted,

MULLIN HOARD & BROWN, LLP
David R. Langston, SBN: 11923800
   (S. Dist. Bar No. 9489)
M. Andrew Stewart, SBN: 24037554
   (S. Dist. Bar No.: 1065805)
Vanessa Gonzalez, SBN: 24065307
   (S. Dist. Bar No.: 1027755)
P.O. Box 2585
Lubbock, Texas 79408-2585
Tel: (806) 765-7491
Fax: (806) 765-0553


By:   /s/ M. Andrew Stewart
     M. Andrew Stewart
     ***Attorneys for City Bank***

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of August, 2010, a true and correct copy of the foregoing Objection was served via the Court's CM/ECF notification system electronic transmission to all registered ECF users and the parties listed below.

1.  Liz Freeman
    PORTER & HEDGES LLP
    1000 Main Street, 36th Fl.
    Houston, Texas 77002
    ***Attorney Debtor***

2.  William A. (Trey) Wood III
    BRACEWELL & GIULIANI LLP
    711 Louisiana, Suite 2300
    Houston, Texas 77002
    ***Attorney for Humble ISD***

By:    /s/ M. Andrew Stewart
      M. Andrew Stewart